**EFiled: Nov 09 2015 11:52AM EST**
**Transaction ID 58134573**
**Case No. 11321-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

November 9, 2015

Brock E. Czeschin, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Steven L. Caponi, Esquire
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, DE 19801

Re: *Tulum Management USA LLC v. Casten*
C.A. No. 11321-VCN
Date Submitted: September 10, 2015

Dear Counsel:

Plaintiffs George Polk ("Polk"), Tulum Management USA LLC ("Tulum"), and RED Capital Investment LP ("RED Capital," and collectively the "Plaintiffs") bring this action on behalf of nominal defendant RED Parent LLC ("RED Parent") against certain members of the RED Parent Board of Managers (the "Defendant Managers"), Recycled Energy Development LLC, and RED Investment LLC ("Asset LLC," and collectively the "Defendants") for alleged breaches of fiduciary duty and breaches of contract, and seeking indemnification and advancement.

## I.  BACKGROUND

RED Parent is a Delaware limited liability company ("LLC") with its principal place of business in Illinois, and is run by Defendant Thomas Casten, RED Parent's sitting Chairperson, and his son Defendant Sean Casten, RED Parent's current CEO (together, the "Castens").[1]  RED Parent has an operating subsidiary, Recycled Energy Development LLC, and a holding subsidiary, Asset LLC, which owns RED Parent's interests in various projects.[2]  Polk controls Tulum, which is the general partner of RED Capital.[3]  Through his control of Tulum and RED Capital, Polk holds 74.589% of the "Preferred Membership Interests" in RED Parent, which amounts to 39.255% of RED Parent's total ownership.[4]  Control of RED Parent is held by the Castens and other owners, including Defendants Fred Brownson and Charles Bayless.[5]  Under RED Parent's Operating Agreement (the "Operating Agreement"), exclusive management

---

[1] Verified Compl. ("Compl." or "Complaint") ¶ 26; Defs.' Opening Br. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, Mot. to Stay Proceedings ("Defs.' Opening Br.") 4.

[2] Compl. ¶ 26; Defs.' Opening Br. 4.

[3] Defs.' Opening Br. 4.

[4] *Id.* at 4-5.

[5] *Id.* at 5.

authority is vested in the "Board of Managers," which is comprised of nine members, six appointed by the Castens and three appointed by Polk.[6]

Certain Board of Managers actions, including intercompany transactions and budget approvals, require the unanimous consent of an "Investment Committee" comprised of two Polk representatives and one Casten representative.[7] In addition to maintaining a controlling interest in the Investment Committee, and therefore veto power over certain RED Parent transactions, Polk holds the right to call for a valuation of projects undertaken by RED Parent,[8] and following a "Trigger Event" as defined by the Operating Agreement,[9] gain control of Asset LLC.[10] One such Trigger Event occurs if the value of RED Parent's assets falls below the "accrued value of the preferred interest."[11] To enforce this provision, any member of the Investment Committee may request a valuation of RED Parent's assets within one year following a "material valuation event such as a material financing event, . . . a

---

[6] Letter from Andrew J. Peach, Esquire Enclosing Am. and Restated Operation Agreement of RED Parent, LLC at Ex. 1 ("Operating Agmt.") § 5.1 (Aug. 6, 2015); Compl. ¶ 30; Defs.' Opening Br. 5.

[7] Operating Agmt. § 1.26; Compl. ¶¶ 30, 48-49; Defs.' Opening Br. 5.

[8] Operating Agmt. § 1.47; Compl. ¶¶ 6-7; Defs.' Opening Br. 6.

[9] Operating Agmt. § 1.47.

[10] *Id.* § 3.8.

[11] Compl. ¶ 30; *accord* Operating Agmt. §§ 1.47, 3.8; Defs.' Opening Br. 7-8.

pattern of consistent deviation greater than 10% relative to the original pro forma financial projections, or a sale or acquisition of assets."[12]  The valuation must be conducted by an "independent accounting firm agreed to by all the Investment Committee Members or, if they are unable to agree, drawn by lot from one firm recommended by each Member."[13]

Polk characterizes his conflict with the Defendant Managers as one of investment strategy; he states that "the Castens are focused on building an energy development company and maximizing the scope and reach of the Casten legacy," while Tulum prefers funding energy projects that would provide "stable and predictable annual cash yields to investors."[14]  Specifically, Polk alleges that the Castens manipulated company capital to (i) bolster legacy assets via intercompany loans, (ii) make payments violating the company budget without Investment Committee approval, (iii) receive inflated payouts, and (iv) fund projects that perpetuate the Castens' management.[15]  Such alleged mismanagement resulted in

---

[12] Operating Agmt. § 1.47(b).
[13] *Id.*
[14] Compl. ¶¶ 40-41.
[15] *Id.* ¶¶ 43, 46, 53-59, 63-64.

cash flow yields 20% to 80% lower than projected,[16] and "forced" Polk to exercise his right to an independent valuation "to determine whether a trigger event has occurred that entitles Tulum to take over management of" Asset LLC.[17]

The Investment Committee selected the accounting firm Deloitte Transactions and Business Analytics LLP ("Deloitte") to conduct the valuation.[18] Plaintiffs and Defendants each dispute the propriety of the others' actions following the selection of Deloitte. Polk argues that on May 15, 2015, Tulum sent Deloitte a copy of the Operating Agreement so that Deloitte could draft its engagement letter accordingly, but that on May 22 RED Parent sent Deloitte a revised engagement letter removing Tulum as a party and terminating "Deloitte's ability to consider information from any source other than management for information on the performance of the assets."[19] On May 29, Polk continues, Deloitte insisted that the engagement letter include both RED Parent and Tulum, and that "it have access to Tulum and other experts familiar with [RED Parent and

---

[16] *Id.* ¶ 64.

[17] *Id.* ¶ 66.

[18] *Id.* ¶ 70; Defs.' Opening Br. 9.

[19] Compl. ¶¶ 71-78. These revisions would ensure that the Castens control the projections used in, and therefore the outcome of, the valuation. *Id.* ¶ 78.

its subsidiaries] so that it could prepare fair and verifiable projections."[20] Defendants, on the other hand, argue that Polk overstepped his authority by choosing the team at Deloitte and having Deloitte submit a draft engagement letter to RED Parent.[21] Polk also, Defendants continue, insisted on conducting the valuation in a manner that would violate Operating Agreement.[22]

On May 29, 2015, RED Parent filed an action in Illinois[23] (the "Illinois Action") to "prevent Polk from acting contrary to the Operating Agreement and to ensure that the valuation process was conducted in accordance with the Operating Agreement."[24] Polk asserts, to the contrary, that the impetus of the Illinois Action is to delay resolution of the dispute, as evidenced by RED Parent's decision to file against Polk (who lives in England and (arguably) is not subject to personal

---

[20] *Id.* ¶ 79.

[21] Defs.' Opening Br. 9.

[22] *Id.*

[23] First Amended Complaint for Declaratory Judgment, *RED Parent, LLC v. Polk*, No. 2015 CH 08634 (Cir. Ct. Ill. Jul 15, 2015); Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, Mot. to Stay Proceedings ("Pls.' Answering Br.") Ex. 2 ("Illinois Action Compl.").

[24] *Id.* The Illinois Action seeks a declaratory judgment that any valuation must comply with the Operating Agreement, that any valuation engagement with an accounting firm be solely with RED Parent, and that the cash flows used in the valuation be determined by RED Parent.

jurisdiction in Illinois) and not Tulum.[25]  On July 21, Polk filed the Complaint in Delaware alleging breach of fiduciary duty and breach of contract and the implied covenant of good faith and fair dealing, and seeking indemnification, advancement, and fees on fees incurred in both the Illinois Action and the case at bar (the "Delaware Action").[26]

## II.    CONTENTIONS

Defendants argue that Delaware law requires the Court to stay the Delaware Action in favor of the first-filed Illinois Action.[27]  Polk responds that the Delaware Action, while filed after the Illinois Action, should proceed because the Illinois Action does not name as a defendant any party to the Operating Agreement, involves distinct parties and issues, and is unable to afford "complete justice."[28]

---

[25] Compl. ¶ 80.

[26] *Id.* ¶¶ 110-56.  The Complaint seeks an injunction to prevent further mismanagement; a declaration that RED Parent and the Defendant Managers breached the Operating Agreement by engaging in the alleged mismanagement and obstructing the independent valuation, that any valuation incorporate both RED Parent and the Investment Committee, and that a Trigger Event has occurred; monetary damages; and litigation costs. *Id.* ¶¶ a-d.

[27] Defs.' Opening Br. 11.

[28] Pls.' Answering Br. 2.

## III.    ANALYSIS

A. *Legal Standard*

In determining whether the facts and circumstances of a case warrant granting a stay, "each case must be considered on its own merits," and the Court will not, as a matter of right, stay a Delaware proceeding solely due to the prior filing of an extra-jurisdictional action involving the same parties and issues.[29] The Court may, however, in its discretion and in consideration of "comity and the necessities of an orderly and efficient administration of justice," stay a Delaware action in favor of an action first filed in another jurisdiction.[30] "A stay is favored when (i) there is a prior action pending in another jurisdiction, (ii) that action involves similar parties and issues, and (iii) the foreign court can render prompt and complete justice."[31] Where the parties and issues are not identical, the Court must "balance the lack of complete identity of parties [and issues] against the

---

[29] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

[30] *Id.*; *accord Willis v. PCA Pain Ctr. of Va., Inc.*, 2014 WL 5396164, at *5 (Del. Ch. Oct. 20, 2014).

[31] *Willis*, 2014 WL 5396164, at *5.

possibility of conflicting rulings which could come forth if both actions were allowed to proceed simultaneously."[32]

B. *Scope of Analysis*

Polk's claims are divisible into three categories: (i) advancement, (ii) valuation, and (iii) fiduciary duty.[33] Because of the limited discovery involved and Delaware's interest in advancement claims, the Court here addresses Defendants' motion to stay with respect to Polk's advancement claim. The Court, however, expresses no opinion at this time with respect to whether Polk's valuation or fiduciary duty claims are more appropriately litigated in Delaware or stayed in favor of the Illinois Action. Presently at issue, therefore, is solely whether Polk's advancement claim should be stayed in favor of the Illinois Action.

---

[32] *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Investors, L.L.C.*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009) (alteration in original) (internal quotation marks omitted).

[33] Teleconference Pls.' Mot. for Expedited Proceedings 5 (Aug. 6, 2015); Pls.' Answering Br. 2.

C. *Application*

      *McWane* favors resolution of all related claims in the court in which an action is first filed.[34]   This policy, however, is, to an extent, at odds with Delaware's interest in resolving advancement claims.[35]   To resolve this tension, this Court has held that "in all but the most exceptional circumstances, claims under Section 145(k) for advancement of expenses should not be stayed or dismissed in favor of the prior pending foreign litigation that give[s] rise to them."[36]  To satisfy this substantial burden, Defendants "must present to the Court

---

[34] *Fuisz v. Biovail Techs., Ltd.*, 2000 WL 1277369, at *1 (Del. Ch. Sept. 6, 2000); *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *3 (Del. Ch. Apr. 12, 1994) (espousing "a preference for litigating a dispute in the first forum chosen.").

[35] *Fuisz*, 2000 WL 1277369, at *1.

[36] *Id.*; *accord Fujisawa Pharm. Co. v. Kapoor*, 655 A.2d 307 (Del. 1995) (hearing a claim for advancement of attorneys' fees because, though the first-filed Illinois action and the Delaware action arose from the same transaction, the advancement claim was not asserted in the Illinois action and therefore the "actions [were] not the same, [so] the doctrine of comity [did] not apply."). The *Fuisz* court reasoned that:

> Section 145(k) represents a determination by the General Assembly that persons claiming a right to the advancement of expenses (including attorneys' fees) under Delaware law should be entitled to have their claims adjudicated by this court in a summary fashion. Unless the person having such an entitlement first actively invokes the jurisdiction of a foreign tribunal and seeks an adjudication of that

a particularly compelling explanation as to why [their] advancement case ought to be stayed" in favor of the Illinois Action.[37]

Defendants argue that the *McWane* standard favors granting a stay of the entire Delaware Action, including the advancement and indemnification claims. First, they note that the Illinois Action was filed over seven weeks before the Delaware Action.[38] Second, they suggest that the two actions involve similar parties,[39] and while Polk adds defendants in the Delaware Action who are not present in the Illinois Action, "it is not necessary to establish that the parties and issues in both actions are identical. 'Substantial' identity suffices; the pragmatic focus is on whether the claims 'are closely related and arise out of the same

---

> issue from it (or some other compelling circumstance amounting to a substantial conflict between the two jurisdictions exists), this court will not regard the foreign action as "first-filed" for purposes of *McWane*'s comity-based analysis.

*Fuisz*, 2000 WL 1277369, at *1. The policy objectives surrounding 8 *Del. C.* § 145 ("Section 145") extend to similar provisions found in operating agreements in the LLC context. *See infra* text accompanying note 57.

[37] *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *6 (Del. Ch. Dec. 23, 2014).

[38] Defs.' Opening Br. 13.

[39] *Id.* at 13-17.

common nucleus of operative facts.'"[40]   Third, Defendants suggest that both actions involve sufficiently similar issues because the valuation claims are identical, the advancement claims arise from a common nucleus of operative fact, and the allegations regarding internal transfers of funds are insufficiently distinct to overcome the presumption favoring a stay otherwise applicable under *McWane*.[41] Finally, Defendants argue, the Illinois court is capable of rendering prompt and complete justice because interpretation of the Operating Agreement, which governs the entire dispute, does not raise any novel issues, and any present fiduciary duty claim is not "so complex and difficult that there is any reason to doubt that the [Illinois] court would be capable of applying Delaware law and delivering justice to the parties."[42]   Defendants further argue that two additional considerations favor granting a stay: the risk that permitting the Delaware Action to proceed would create conflicting interpretations of the Operating Agreement,

---

[40] *ODN Hldg. Corp. v. Hsu*, 2012 WL 1345487, at *8 (Del. Ch. Mar. 30, 2012) (quoting *EuroCapital Advisors, LLC v. Colburn*, 2008 WL 401352, at *2 (Del. Ch. Feb. 14, 2008)).

[41] Defs.' Opening Br. 17-24.

[42] *Id.* at 24-25 (quoting *Brookstone P'rs Acq. XVI, LLC v. Tanus*, 2012 WL 5868902, at *6 (Del. Ch. Nov. 20, 2012)).

and Delaware's policy favoring resolution of all related claims "in the same court at the same time."[43]

As stated, the scope of this decision is limited to Polk's advancement claim. Defendants' arguments equating the Delaware and Illinois Actions' parties and issues, therefore, are largely inapposite. Regardless whether the remaining issues proceed in Delaware or Illinois, Defendants must present to the Court a "particularly compelling explanation" as to why the Court should stay Polk's advancement claim in favor of the Illinois Action.[44]

Defendants offer three arguments attempting to satisfy this burden. First, they argue that the advancement claim requires interpretation of the Operating Agreement—the same contract that governs the valuation claims—and therefore shares a common nucleus of operative fact with the valuation claims.[45] Second, they continue, though Polk has not asserted this claim in Illinois, he can still do

---

[43] *Id.* at 25 (quoting *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994)).

[44] *Holley*, 2014 WL 7336411, at *6.

[45] Defs.' Opening Br. 18-19.

so.[46] Finally, Defendants conclude, Polk's advancement, indemnification, and fees on fees claims are "untenable" because the Operating Agreement's provision allowing for advancement does not extend to Polk's actions taken in his capacity as a member of the Investment Committee.[47]

Defendants' three arguments do not amount to the "exceptional circumstances"[48] requisite to justify staying, in favor of a foreign jurisdiction, an advancement claim asserted in Delaware. First, though governed by the Operating Agreement, the advancement claim is independent from the valuation and fiduciary duty claims, and its resolution in Delaware will not create "duplicative and inconsistent rulings"[49] whether future litigation occurs in Delaware or Illinois. Second, the facts that Polk *could* assert his claim in Illinois and that *McWane* favors resolution of all related claims in the jurisdiction in which the claim is first

---

[46] *Id.* at 19; *Tex. Instruments Inc. v. Cyrix Corp.*, 1994 WL 96983, at *5 (Del. Ch. Mar. 22, 1994) ("The weight accorded to this factor depends upon whether the two actions are 'similar,' not whether they are identical. That is, the critical question is not whether TI *must* assert its claims in the Texas action, but whether TI *can* assert them.").

[47] Defs.' Opening Br. 20.

[48] *Fuisz*, 2000 WL 1277369, at *1.

[49] Defs.' Opening Br. 25 (citing *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *8 (Del. Ch. May 16, 2005)).

filed do not outweigh Delaware's strong preference for resolving advancement claims.[50] The sole case cited by Defendants to support their proposition that "Delaware is not the exclusive jurisdiction for advancement and indemnification claims"[51]—*Johnston v. Caremark RX, Inc.*[52]—is inapplicable to the facts at bar. There, the Court stayed an advancement action filed in Delaware by the same party that put advancement in issue in the foreign jurisdiction five weeks earlier.[53] Here, however, advancement is not at issue in the Illinois Action, and as stated, the fact that Polk *could* bring the claim there is not determinative.[54] Finally, Defendants' argument regarding the merits of the advancement claim (*i.e.*, that it is untenable because Polk is entitled to advancement under the Operating Agreement only for actions taken in his capacity as a manager, not as an Investment Committee

---

[50] *Fuisz*, 2000 WL 1277369, at *1; *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 505 (Del. 2005); *Pontone v. Milso Indus. Corp.*, 2014 WL 4967228, at *4 (Del. Ch. Oct. 6, 2014) ("Both parties highlight Delaware's public policy of promoting prompt resolution of disputes about advancement issues."); *HLTH Corp. v. Axis Reinsurance Co.*, 2009 WL 3326628, at *1 n.7 (Del. Super. Sept. 30, 2009).
[51] Defs.' Opening Br. 19.
[52] 2000 WL 354381 (Del. Ch. Mar. 28, 2000).
[53] *Id.* at *3.
[54] *See supra* note 50 and accompanying text.

member) is inapposite with respect to the issue at bar, that is, in which forum the litigation is most appropriate.

Defendants further argue that because RED Parent is an LLC, and therefore Polk's advancement rights are contractual and not governed by Section 145, Delaware's interest in advancement claims and the accompanying "exceptional circumstances" standard do not apply.[55] This argument is unavailing. Although LLCs are "creatures of contract" and therefore provide maximum flexibility to the contracting parties,[56] "[t]he same policy reasons supporting indemnification for corporate actors apply to actors for other entities, including LLCs."[57] Further, the fact that the Operating Agreement does not require the parties to litigate the indemnification and advancement claims in Delaware[58] does not preclude such litigation, especially when it is in keeping with longstanding Delaware policy.

---

[55] Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, Mot. to Stay Proceedings ("Defs.' Reply Br.") 10-13.

[56] *Related Westpac LLC v. JER Snowmass LLC*, 2010 WL 2929708, at \*6 n.30 (Del. Ch. July 23, 2010); *TravelCenters of Am., LLC v. Brog*, 2008 WL 1746987, at \*1 & n.6 (Del. Ch. Apr. 3, 2008).

[57] *Costantini v. Swiss Farm Stores Acq. LLC*, 2013 WL 4758228, at \*1 (Del. Ch. Sept. 5, 2013), *opinion withdrawn in part on reargument*, 2013 WL 6327510 (Del. Ch. Dec. 5, 2013).

[58] Defs.' Reply Br. 12.

## IV.    CONCLUSION

Defendants' motion to stay Plaintiffs' advancement claim in favor of the Illinois Action is denied.   The Court, however, reserves decision regarding Defendants' motion to stay Plaintiffs' additional claims, including the valuation and fiduciary duty claims.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc:    Register in Chancery-K